1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    RONNIE LEE MOODY,                           Case No. 15-cv-04198-JSC

8                    Plaintiff,                   **ORDER GRANTING IN PART AND
                                                  DENYING IN PART MOTION FOR**
9           v.                                    **SUMMARY JUDGMENT**

10   SIMMS, et al.,                               Re: Dkt. No. 33

11                   Defendants.

12                                    **INTRODUCTION**

13          Plaintiff, a California prisoner proceeding pro se, filed this civil rights complaint under 42

14   U.S.C. § 1983 against eight employees of the San Francisco Sheriff's Department ("SFSD") for

15   using excessive force against him both shortly after his arrest and later when he was in the SFSD's

16   custody in the county jail.  With leave of the Court, Plaintiff filed a First Amended Complaint.

17   (ECF No. 11.)  Defendants filed a motion for summary judgment.[1]  Plaintiff filed an opposition,

18   and Defendants filed a reply brief.  For the reasons discussed below, the motion for summary

19   judgment is GRANTED IN PART AND DENIED IN PART.

20                                     **DISCUSSION**

21   I.     Plaintiff's Allegations

22          In his amended complaint, Plaintiff alleges that while he was waiting for medical treatment

23   at San Francisco General Hospital, SFSD Deputy Brown twisted his wrist while SFSD Deputy

24   Simms hit him in the face, grabbed his neck, shoved his fingers in Plaintiff's nostrils, and twisted

25   Plaintiff's head and fingers.  (ECF No. 11 at 2.)  He also alleges that on March 25, 2015,

26   Defendants SFSD Deputies Neu, Chiba, Trubin and Bliss dragged him out of his cell and stepped

27   _____

28   [1] All parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.  (ECF
     No. 1 at 4; ECF No. 24.)

United States District Court
Northern District of California

1    on his ankle.  (*Id.*)  They brought him to a safety cell where they punched him in the face.  (*Id.*)

2    The next day, Defendants Neu, Chiba, Bliss, Clark and Taylor, along with unnamed "John Doe"

3    officers, dragged him back to his cell, and tasered, punched, kneed, and kicked him, bent his

4    fingers, and forced him under his bed.  (*Id.*)  Defendants were aware that he had a broken hand at

5    the time.  (*Id.*)  Plaintiff thereafter filed a grievance against them.  (*Id.*)

6    II.    <u>Summary Judgment Evidence</u>

7            In support of their motion, Defendants have submitted their own sworn declarations,

8    documents, and a transcript of Plaintiff's deposition taken for this case.[2]  (ECF Nos. 43-49, 50.)

9    Plaintiff has not submitted any opposing evidence, although his sworn deposition has been filed by

10   Defendants.[3]  (ECF Nos. 46-1, 68.)  His amended complaint cannot be considered an affidavit

11   because it is not sworn under penalty of perjury.  (ECF No. 11 at 2-3.)  *See Lew v. Kona Hosp.*,

12   754 F.2d 1420, 1423 (9th Cir. 1985) (holding that an unverified first amended complaint is

13   insufficient to counter a summary judgment motion supported by affidavits); *cf. Schroeder v.*

14   *McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an opposing

15   affidavit under Rule 56 to extent it alleges facts that fall within plaintiff's personal knowledge).

16   While Plaintiff's original complaint is sworn under penalty of perjury (ECF No. 1 at 3), in his

17   deposition Plaintiff greatly expands upon the few non-conclusory facts alleged in the original

18   complaint.  Lastly, the statement Plaintiff attached to his original complaint cannot be considered

19   as evidence because it is also unsworn.  (ECF No. 1 at 10-19.)

20         A.    <u>February 8, 2015 Incident</u>

21            On February 7, 2015, Plaintiff was arrested by San Francisco Police Department ("SFPD")

22   officers for committing a number of crimes that day, including robbery, assault, evading arrest,

23   attempting to remove an officer's gun, and stealing a car.  (ECF No. 46-1 (Plaintiff's Deposition)

24

25   [2] The declaration of Defendant Simms is not considered because it was filed long after the other
     evidence and after the briefing on this motion was complete, and although it purports to be a
26   "corrected" declaration, no earlier version of the declaration was filed either.  (ECF No. 72.)
     [3] The opposition is three pages, and includes only an introduction and no argument or evidence.
27   (ECF No. 68.)  Plaintiff was given warnings by Defendants and the Court pursuant to *Rand v.*
     *Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), about the nature of summary judgment
28   motions and the importance of opposing them.  (ECF Nos. 7, 13, 42.)  The Court also allowed
     Plaintiff three months to prepare and file his opposition.  (ECF Nos. 57, 64.)

United States District Court
Northern District of California

at 16-21, 41, 45, 56-57, 65-67.)  SFPD took him to San Francisco General Hospital for medical treatment of a broken finger on his right hand, lacerations on his forehead, bruises, and scrapes on his knee, all sustained that day.  (*Id.* at 21, 59, 63-64.)  Plaintiff had also been taking crack and powder cocaine and drinking alcohol.  (*Id.* at 16-17, 25.)

At about 3:30 the next morning, Defendants Simms and Brown were on patrol at the hospital where Plaintiff was being treated.  Plaintiff --- who is approximately six feet tall and weighed between 240 and 250 pounds[4] --- was handcuffed to a gurney and a nurse was treating him when he cursed and spat in the nurse's face.  (ECF No. 44 (Decl. Brown) ¶ 6, 9; ECF No. 46-1 at 22, 75-76, 94-95.)  Plaintiff was still under the influence of drugs and hallucinating.  (ECF No. 46-1 at 74, 77.)  Plaintiff continued cursing, and he was thrashing and moving his body and limbs; Simms put a spit mask on him.  (ECF No. 44 ¶¶ 7-8, 12; ECF No. 44-1 (SFSD Incident Report) at 6; ECF No. 46-1 at 85-86, 98.)  Brown, Simms, SFSD Deputy Truong (who is not a defendant), two SFPD officers, and the nurse tried to hold Plaintiff still in order to put soft restraints on him.  (ECF No. 44 at ¶¶ 8, 10-11, 14.)  Simms took control of Plaintiff's head, Brown controlled Plaintiff's leg with his hands and body weight, Deputy Truong controlled his other leg the same way, and the two SFPD officers controlled his arms by bending his wrists. (ECF No. 44 ¶¶ 10,-11; ECF No. 44-1 at 6; ECF No. 46-1 at 104-05.)  Plaintiff was moving his head around a lot and sitting up, and Plaintiff's blood flew from his spit mask with some of it landing on Simms.  (ECF No. 44 ¶¶ 12, 18; ECF No. 44-1 at 6; ECF No. 46-1 at 84.)  Simms pressed on the the inside of Plaintiff's nose and tried to press on Plaintiff's mastoid and neck through Plaintiff's neck brace.  (ECF No. 46-1 at 83-84.)  Simms also ordered Plaintiff to stop resisting, but despite hearing these orders, Plaintiff continued to curse and thrash his body and head around.  (ECF No. 44 ¶¶ 12, 14; ECF No. 44-1 at 6; ECF No. 46-1 at 84-85, 98.)  The nurse applied soft restraints to Plaintiff's legs and arms, but as Plaintiff continued to try to sit up, Simms twisted Plaintiff's hand in the handcuffs, Brown applied pressure to Plaintiff's forearm, and they both bent Plaintiff's fingers back and tightened the handcuffs.  (ECF No. 44 ¶¶ 13-15; ECF No.

---

[4]Plaintiff provides his height and weight in his deposition.  (ECF No. 46-1 at 52.)

1   44-1 at 6; ECF No. 46-1 at 86-91.)

2   Plaintiff told the officers: "You guys are going to pay for this!  Fuck you!," "You're going

3   to pay for this, nigga! You're going to regret what you did! You don't know who my family is!

4   I'm going to come back up in here!", and "Simms, S-I-M-M-S, I'm from Hunters Point!  Me and

5   my boys are going to shoot you!"  (ECF No. 44 ¶ 12, 17; ECF No. 46-1 at 95-96.)  Plaintiff

6   testified in his deposition that these were "threats" and that he said these things "to scare"

7   Defendants and the other officers present.  (ECF No. 46-1 at 79:20, 95:21.)

8   After he was restrained, Plaintiff received further medical treatment.  He had a nose bleed

9   and his nose hurt for a "few days," he had neck pain for a "few minutes," he had pain in his

10   fingers for "several days," and he suffered ankle pain for "a couple days."  (ECF No. 46-1 at 99-

11   100.)

12   Based on his conduct during this incident, Plaintiff was charged with making threats,

13   resisting an officer, and battery.  (ECF No. 44 ¶ 21.)  The parties do not indicate how these

14   charges were resolved.

15   B.   March 25, 2015 Incident

16   On March 25, 2015, Defendant Sergeant Bliss told Plaintiff to clean his cell, but Plaintiff

17   refused, swore at him, and threatened to fight him.  (ECF No. 43 (Bliss Decl.) ¶¶ 2, 4; ECF No.

18   46-1 at 118.)  Plaintiff did not believe he needed to clean his cell, and he was angry because he

19   was not receiving kosher meals.  (ECF No. 46-1 at 122.)

20   Because there were indications in Plaintiff's records that he had fought with jail employees

21   and police officers in the past and had previous charges for violent crimes, Bliss and his supervisor

22   decided that Plaintiff posed a danger to others and should be moved to a "safety cell" --- i.e. a

23   padded cell for inmates who pose a danger to themselves or others in which the inmate's

24   possessions and clothing are taken, he receives a blanket, and he is continuously observed.  (ECF

25   No. 43 ¶¶ 5-9.)  Defendants Neu, Trubin, Chiba --- as well as non-defendants Deputies Staehly

26   and Morris --- escorted Plaintiff to the safety cell in handcuffs, and Bliss stood outside the safety

27   cell to oversee the process.  (Id. ¶ 11.)

28   On the way to the safety cell, Chiba bent Plaintiff's wrist backward, and once they got

United States District Court
Northern District of California

4

United States District Court
Northern District of California

there, he "snatched" the wooden splint from Plaintiff's fingers.  (ECF No. 46-1 at 123-25.)
Plaintiff knelt down inside the cell while his handcuffs were removed.  (*Id.* at 125.)  Once
Plaintiff's hands were free, Chiba stepped on Plaintiff's ankles; Plaintiff asked why this was
happening over a kosher meal request, and Chiba slapped Plaintiff once in the face with enough
force to knock him over.  (*Id.* at 125-28.)  Plaintiff stood up and fought the deputies, punching
Chiba, Staehly, and Morris in the face; the deputies tried and failed to grab and control Plaintiff's
body, and they also ordered him to stop.  (ECF No. 43 ¶¶ 13-16; ECF No. 46-1 at 128-32; ECF
No. 50 ¶¶ 4-5.)  At Bliss's order, Morris tasered Plaintiff, Plaintiff continued to fight and struggle
with the guards, Morris tasered him again, and Plaintiff dropped to the floor, stopped resisting, and
was handcuffed.  (*Id.* ¶ 17; ECF No. 50 ¶ 7.)  Plaintiff's deposition testimony is initially
ambiguous as to whether he stopped resisting before or after the taser: first he states that he
stopped and "then" was tasered (ECF No. 46-1 at 132:12-16), but then he immediately states that
he stopped fighting after he was tasered (*id.* at 132:16-17, 132:21-22).  A few moments later he is
unequivocal that he stopped fighting after he was tasered. (*Id.* at 134:15-21.)

Plaintiff was examined by a nurse for swelling around his eye, a bloody lip, and his injured
right hand.  (*Id.* at 139-41.)  Chiba, Staehly and Morris received treatment for injuries to their
faces.  (ECF No. 43 ¶¶ 18, 19; ECF No. 50 ¶ 8.)

Defendant Clark was working in an office at the time of this incident, and by the time she
arrived at the scene, Plaintiff was already restrained.  (ECF No. 45 (Clark Decl.) ¶ 5.)  Defendant
Taylor also arrived at the scene after Plaintiff was restrained.  (ECF No. 49 (Taylor Decl. ¶ 3.)
Clark and Taylor did not participate in Plaintiff's placement in the safety cell or use any force on
him.  (*Id.*; ECF No. 45 ¶ 8; ECF No. 46-1 at 203-04.)  Defendants Neu and Trubin also did not use
any force against Plaintiff on that day.  (ECF No. 46-1 at 201-02.)

C.    March 26, 2015 Incident

On March 26, 2015, Plaintiff was cleared to move from the safety cell back to his cell.
(ECF No. 45 ¶ 9.)  The parties dispute much of what occurred during that move.  According to
Plaintiff, Neu, Taylor, Clark, Chiba, and Trubin --- as well as two non-defendants Captain Adams
and Deputy Tilton --- either personally used force or witnessed each other use force against him.

5

1   (ECF No. 46-1 at 146-56, 204-05.)  Defendants deny using or seeing any force against Plaintiff

2   that day.  Defendant Clark, who served as Watch Commander that day, states that when she

3   arrived at the safety cell, Plaintiff was already dressed, handcuffed and out of the safety cell, and

4   she saw no force used against Plaintiff or resistance by him while she escorted Plaintiff back to the

5   cell.  (ECF No. 45 ¶¶ 10-13.)  Neu and Bliss state that they were not working that day (ECF No.

6   43 ¶ 26; ECF No. 47 ¶ 8, Exh. A.), and Taylor, Trubin and Chiba state that they did not escort

7   Plaintiff or participate in his transfer (ECF No. 43 ¶¶ 10-11; ECF No. 48 (Trubin Decl.) ¶¶ 7-8;

8   ECF No. 49 ¶¶ 5-6.)

9        Plaintiff states that when Defendants Taylor, Clark, Neu, Chiba and Trubin picked him up

10  for his transfer, he followed their orders for him to put his hands through a slot backwards for

11  handcuffing.  (ECF No. 46-1 at 148.)  When he did, they bent his broken finger backward to the

12  point of bleeding "a lot," but he could not see who did it because he was facing the other direction.

13  (*Id.* at 148-50.)  While walking him back to his cell, the pain from the finger caused him to

14  collapse, and then they started dragging him by the handcuffs and punching and kicking him.  (*Id.*

15  at 150-52.)  He was punched approximately ten times in the ribs, head, face and injured right knee,

16  including punches to the face by Taylor, Clark, Chiba, and Trubin.  (*Id.* at 150-53, 202-05.)  He

17  was kicked six or seven times in his injured right knee, including Chiba kicking him in the ribs.

18  (*Id.* at 150-53.)  During the assault, Taylor said repeatedly, "Who's your daddy?"  (*Id.* at 148.)

19  They then gave him shots of tranquilizers, and when they got to his cell, they pushed him under

20  his bunk in his cell.  (*Id.* at 154-56.)  They then removed his handcuffs and left.  (*Id.* at 157-58.)

21  During the course of this altercation, Plaintiff did not yell at the deputies, curse at them, fight

22  back, or resist.  (*Id.* at 156-57.)  Taylor and Trubin came back later that day and took him for

23  booking on charges of assault and battery on an officer, which were later dismissed.  (*Id.* at 158-

24  59, 167.)

25        Plaintiff then received pain medication and a new splint from a nurse.  (ECF No. 46-1 at

26  162, 164-66.)  He suffered swelling in his face and hands, and torn skin around his fingers, which

27  lasted for about a week, and he had rib pain for "months."  (*Id.* at 164.)

28                                **DISCUSSION**

United States District Court
Northern District of California

United States District Court
Northern District of California

I.    <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.v. Cattret*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).  If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party.  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II.    <u>Analysis</u>

Plaintiff complains that Defendants used excessive force against him.  To prove an excessive force claim under § 1983, a pretrial detainee[5] must show only that the "force purposely

---

[5]The Due Process Clause of the Fourteenth Amendment protects a post-arraignment, pretrial detainee from the use of excessive force that amounts to punishment.  *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)).  The Fourth Amendment applies to allegations of use of excessive force against pre-arraignment detainee.  *Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1043 (9th Cir. 1996).  It is not clear when Plaintiff was arraigned, but it does not matter for this analysis because under either Amendment, the analysis of his excessive force claim turns on the reasonableness of the officers' actions under the circumstances.  *See id.* (applying Fourth Amendment reasonableness standard to pretrial detainee's claim); *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990) (due process claim by pretrial detainee requires courts to balance several factors focusing on the reasonableness of the officers' actions under the circumstances).

7

or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Because this standard is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc). A non-exhaustive list of considerations that may bear on the reasonableness of the force used includes "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

Officers may also be held liable if they have an opportunity to intercede when their fellow officers use excessive force but fail to do so. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

A.   Events of February 8, 2015

The only defendants involved in the use of force on Plaintiff on February 8, 2015, were Simms and Brown. The material facts shown by the evidence are not in dispute, and they establish that a reasonable trier of fact would have to find that Simms and Brown applied force reasonably under the circumstances.

Plaintiff needed a spit guard because he had spat on the nurse, and needed restraints on his arms and legs because he was flailing his limbs when they tried to apply the spit guard. Force was necessary because Plaintiff thrashed his body and limbs and tried to sit up when Simms, Brown and the others tried to apply the spit guard and restraints. The force needed to be substantial because Plaintiff is a big man who was under the influence of drugs and did not heed orders to stop resisting. A reasonable trier of fact would have to find that the amount of force used by Brown and Simms was rationally related to the need to restrain Plaintiff under such circumstances. Simms held Plaintiff's face and applied pressure on two points in his face to try to control him and put on the spit mask. Brown secured a leg and later a forearm, and Simms secured Plaintiff's face

8

and head area.  Brown and Simms tried to temper the amount of force by verbally instructing him to stop resisting first, and by using soft instead of hard restraints.  Plaintiff did not suffer any serious injuries in this incident --- a bloody nose and pain but no injuries to his ankle, wrist, finger and neck for several days or less.  Finally, Plaintiff posed a serious threat insofar as he had just committed a number of violent crimes including against a police officer, spat on the nurse, was cursing and defiant, and specifically articulated a threat to have his family and friends kill both Defendants and the other officers.

Plaintiff's deposition testimony does not create a genuine dispute of *material* fact.  For example, Plaintiff testified that Simms put his fingers in Plaintiff's nose.  (Dkt. No. 46-1 at 86, 104.)  Assuming Simms did so, it does not permit a finding of excessive force given the circumstances.  It is undisputed that Plaintiff was ignoring orders to stop resisting, was trying to sit up, and was moving his head around causing blood to fly through the air from behind his spit mask.  This exposed everyone present to Plaintiff's bodily fluids, and it was reasonable for Simms to try to keep the spit mask in place by controlling Plaintiff's head with pressure to sensitive areas like Plaintiff's nose.  Similarly, Plaintiff testified that Defendants "tried to choke him" and bended his fingers and twisted his wrist.  (Dkt. No. 46-1 at 86.)  Again, this testimony is consistent with the Defendants' testimony as to their efforts to restrain him, keep his spit mask in place, and prevent potentially hazardous exposure to Plaintiff's blood.

Viewing the record in a light most favorable to Plaintiff, a reasonable trier of fact would have to find that the amount of resistance Plaintiff offered and the severity of the threat he posed reasonably justified the force applied by Simms and Brown.  At a minimum, Defendants would at least be entitled to qualified immunity given Plaintiff's own testimony about his conduct.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim that the force used against him on February 8, 2015, violated his constitutional rights.

B.    March 25, 2015 Incident

Plaintiff also claims that Defendants Bliss, Chiba, Neu and Trubin used excessive force against him when he was moved to the safety cell on March 25, 2015.  Defendants Bliss, Neu and Trubin are entitled to summary judgment on this claim because the evidence shows no triable

9

issue of fact as to whether the force was applied unreasonably under the circumstances.  Defendant

Chiba not entitled to summary judgment on this claim because there is a triable issue of fact as to

whether it was reasonable for him to slap Plaintiff in the safety cell.

1.    Defendant Bliss

There is no dispute that Plaintiff shouted and cursed at Bliss, threatened to fight him, and

had a history of violent conduct against guards and police officers, which reasonably prompted

Bliss's decision to summon other deputies to move Plaintiff to a safety cell.

Later, when Plaintiff fought with the deputies inside the safety cell, Bliss remained outside

the cell and ordered Deputy Morris to fire a taser at Plaintiff twice.  There is no dispute that when

Bliss ordered Morris to fire the taser, Plaintiff was not handcuffed, had been fighting with the

deputies in the cell --- including punching three of them in the face --- and the deputies were

unable to restrain him.  According to Defendants, Plaintiff was still fighting and struggling when

he was tasered and only stopped after he was tasered a second time.  Under such circumstances

using a taser was reasonable because--- although a taser inflicts a considerable amount of force

and pain --- Defendants faced a serious threat of a large and angry inmate with a history of

violence who was fighting them, had punched and injured three guards, disobeyed orders to stop,

and was still out of handcuffs.

Finally, as explained above, Plaintiff's testimony was eventually unequivocal that he had

not stopped fighting before he was tasered.  A trier of fact would therefore have to find that the

taser force was reasonable under the circumstances.  However, even if Plaintiff had in fact stopped

actively fighting, he was still a serious and unsecured threat because he was not in handcuffs and

had just injured three deputies, such that there was no reasonable way to know whether he would

simply resume fighting.  Accordingly, this possible ambiguity in Plaintiff's testimony does not

create a triable factual issue as to whether Bliss unreasonably ordered Plaintiff to be tasered.  And

even if it did, Defendant Bliss would be entitled to qualified immunity.

2.    Defendant Chiba

Plaintiff's account that Chiba bent Plaintiff's wrist back on the way to the safety cell, and

then snatched the splint from Plaintiff's finger once at the safety cell is not disputed.  Bending

10

1  Plaintiff's wrist back was not a significant amount of force as there is no evidence that it injured

2  him, and was a reasonable way to keep Plaintiff under control given Plaintiff's belligerent cursing,

3  history of violence, and recent statement that he wanted to fight Bliss.  It was also reasonable to

4  snatch the splint from Plaintiff's finger at the safety cell, where all of an inmate's clothes and

5  possessions are removed to prevent them from hurting themselves and others.  Confiscating the

6  splint, made from wood, was a reasonable precaution against Plaintiff turning it into a weapon

7  while in the safety cell.

8         Chiba does not dispute that he stepped on Plaintiff's ankles and slapped him when Plaintiff

9  was kneeling in the safety cell.  At that point, Plaintiff was not in handcuffs, and Defendants

10  provide evidence that stepping on Plaintiff's ankles was a standard --- albeit unsuccessful in this

11  case --- way to prevent Plaintiff from uncrossing them and jumping to his feet.  Plaintiff's ankles

12  were not injured, nor is there other evidence that Chiba stomped on them or used more force than

13  reasonably necessary to keep Plaintiff under control.  While Plaintiff did not offer physical

14  resistance, he continued to voice his displeasure about his kosher meals.  As Plaintiff had just

15  threatened to fight Bliss over that topic, and had a history of fighting with guards, in that moment

16  it was uncertain whether Plaintiff was going to try to stand up and fight the deputies.  Given the

17  uncertain and tense situation, stepping on Plaintiff's ankles to control him was a reasonable use of

18  force.

19         The same cannot be said, however, of slapping Plaintiff.  Given that according to

20  Plaintiff's deposition testimony he was kneeling, his ankles were restrained, and he had not yet

21  fought the deputies, a reasonable trier of fact could find slapping Plaintiff hard enough to knock

22  him over while also stepping on his ankles was not a reasonable use of force under those

23  circumstances.

24         SFSD's reliance on *Arrieta v. City of Kern*, 161 F.Supp.3d 919 (E.D. Cal. 2016), is

25  unpersuasive.  There the evidence showed a single push to the plaintiff's shoulder in order to

26  restrain him.  *Id.* at 928.  Here, in contrast, drawing all inferences in Plaintiff's favor, he was

27  kneeling and Officer Chiba was standing on his ankles to restrain him when Officer Chiba slapped

28  him so hard he could have fallen to the ground.  While a jury might find that such a slap was

United States District Court
Northern District of California

1   reasonable, it also might not.  As a trial is required on this particular excessive force claim, the

2   Court will not grant summary judgment to Officer Bliss on Plaintiff's claims against him arising

3   out of the March 25, 2015 incident.

4                    3.      Defendants Neu and Trubin

5          The evidence shows that that Defendants Neu and Trubin were present when force was

6   used on Plaintiff in the safety cell on March 25.  Neu and Trubin deny applying any force,

7   however, and Plaintiff offers no evidence that they did.  And the evidence is insufficient to support

8   a finding that Neu and/or Trubin are liable for failing to intercede.

9          C.      March 26, 2015

10          The parties offer conflicting accounts of what took place when the deputies moved

11  Plaintiff from the safety cell back to his cell on March 26, 2015.  As Plaintiff is the non-moving

12  party, his account must be taken as true at this stage of the litigation, and all inferences from that

13  account must be taken in his favor.  Based upon Plaintiff's account, Defendants Taylor, Clark,

14  Neu, Chiba and Trubin used force unreasonably and are not entitled to summary judgment on

15  Plaintiff's claim.[6]

16          According to Plaintiff, he did not resist, struggle, disobey orders, or threaten to harm any

17  of the deputies or anyone else.  Nevertheless, after he cooperated with being handcuffed from

18  behind, deputies bent his broken finger back far enough to make it bleed and cause him to

19  collapse, dragged him by the handcuffs to his cell, punched and kicked him in the face, ribs, head

20  and injured knee approximately 17 times, and forced him under his bed before his handcuffs were

21  removed.  Although Plaintiff's size and history --- including fighting and injuring three deputies

22  the day before --- provided cause for caution and perhaps some amount of force, that he was not

23  offering any resistance or struggle and was handcuffed obviated the need for any substantial use of

24  force, let alone the very significant amount of force he describes.

25          Plaintiff testified in his deposition that Defendants Taylor, Clark, Chiba, and Trubin

26  punched him in the face, Chiba kicked him in the ribs, and Taylor asked him, "Who's your

27

28  [6] There is no dispute that Bliss, Simms, and Brown were not present or involved in Plaintiff's
    transfer or the use of force.

United States District Court
Northern District of California

1    daddy?" while assaulting him.  It is true that he does not remember whether Neu applied force,

2    and he does not know who among the Defendants and two other deputies who participated in the

3    transfer bent his finger back, dragged him from behind or administered the other kicks and

4    punches he describes because those acts were inflicted from behind him.  Nevertheless,

5    Defendants need not have personally applied the force because they may be held liable if they

6    were present and could have but failed to intercede in the other deputies' excessive use of force.

7    *See Cunningham*, 229 F.3d at 1289-90.  Plaintiff's testimony that Defendants Taylor, Chiba,

8    Clark, Trubin and Neu were present for and witnessed the use of significant force against Plaintiff

9    reasonably leads to the inference that they each had the opportunity to stop the unreasonable use of

10    force on Plaintiff but failed to do so.

11      Based on the facts that must be assumed to be true in deciding the motion for summary

12    judgment, a reasonable fact-finder could conclude that Defendants Chiba, Taylor, Clark, Trubin

13    and Neu used force unreasonably against Plaintiff, or had the opportunity to intercede in their

14    fellow deputies' unreasonable use of force but failed to do so.  As a result, there are triable issues

15    of material fact as to whether these Defendants violated Plaintiff's constitutional rights.

16      D.    <u>Qualified Immunity</u>

17      Defendants argue that they are entitled to qualified immunity. A court considering a claim

18    of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual

19    constitutional right and whether such right was clearly established such that it would be clear to a

20    reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v.*

21    *Callahan*, 555 U.S. 223, 236 (2009).  The triable issues of fact also preclude granting qualified

22    immunity because it would be clear to any reasonable deputy that it is not reasonable to bend back

23    the broken finger of a handcuffed and compliant inmate, to drag him to his cell, and to kick and

24    punch him repeatedly.  It would be similarly clear to any reasonable deputy that it is unreasonable

25    to slap an inmate who is kneeling and not resisting hard enough to knock him over when the

26    deputy is already restraining the inmate by stepping on his ankles.

27                   **CONCLUSION**

28      For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN

PART AND DENIED IN PART.  Summary judgment is granted to Defendants Bliss, Simms and Brown on all claims; summary judgment is granted to Defendants Neu, and Trubin as to the claims arising from the use of force on March 25, 2015 but denied as to Defendant Chiba as to those claims; and summary judgment is denied on Plaintiff's claims against Defendants Chiba, Neu, Trubin, Clark and Taylor arising from the use of force on March 26, 2015.

Discovery --- which was opened in the Order of Service (ECF No. 7) --- will close 60 days from the date this order is filed.

**On or before April 14, 2017, the remaining Defendants shall advise the Court in writing whether they wish to participate in the Pro Se Prisoner Mediation Program.**

This Order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: March 31, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California